(612 P.2d 656)
No. 51,479

EBENEZER ANTWI, *Appellant,* v. C-E INDUSTRIAL GROUP and/or COMBUSTION ENGINEERING, INC., *Appellee.*

Opinion filed May 30, 1980.

*George E. McCullough,* of McCullough, Wareheim & LaBunker, of Topeka, for the appellant.

*Alvin D. Herrington,* of McDonald, Tinker, Skaer, Quinn & Herrington, of Wichita, for the appellee.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an appeal of a workmen's compensation award rendered by the district court of Dickinson County in favor of the claimant, Ebenezer Antwi, against the respondent, self-insurer C-E Industrial Group and/or Combustion Engineering, Inc. Claimant was awarded 141 weeks of temporary total disability and 274 weeks of compensation for a 12½% permanent partial general disability.

The claimant raises the following issues for our review. (1) Whether the district court erred by construing K.S.A. 1979 Supp. 44-510g, the vocational rehabilitation statute of the Workmen's Compensation Act, to require that a claimant's permanent partial general disability rating, after successful completion of a rehabilitation program, must be based upon his ability to engage in the work for which he was vocationally rehabilitated. (2) Whether the district court erred by finding that the claimant had a 12½% permanent partial general disability after rehabilitation. (3) Whether the trial court erred by refusing to allow an open court statement made prior to rendering its decision awarding disability benefits to claimant to be set out in the journal entry.

The claimant, a 42-year-old machinist, injured his back during the course of his employment with the respondent on December

18, 1975, while lifting a part with a hoist. Claimant had worked for the respondent since January of 1970. At the time of his injury, his job consisted of heavy physical labor such as stooping, bending, and lifting heavy pieces of equipment. Although claimant had access to hoists to lift heavy materials, he was often required to lift machinery weighing fifty to eighty pounds without such assistance. Claimant immediately notified his boss of the injury, but finished working the remaining hour of his night shift. He returned to work the next afternoon at 3:00 p.m., but by 7:00 p.m. the pain in his back became very severe and he could hardly move.

An ambulance was called and claimant began an extensive and lengthy series of medical treatments for his back condition. He received pain medication and was hospitalized for traction, physical therapy, rest and back surgery. Dr. S. C. McCrae, an orthopedic surgeon, initially examined the claimant and administered conservative treatments for his back. Later, claimant asked to receive medical care from Dr. Jack Lungstrum, another orthopedic surgeon, and the respondent's attorney granted his request. After consulting with a neurosurgeon in Wichita, Dr. Lungstrum performed a laminectomy on April 6, 1976, which relieved much of the pain the claimant had been experiencing.

A detailed description of the treatment received by the claimant is unnecessary for disposition of this appeal. Furthermore, the employer admitted that the injury occurred during the course of claimant's employment and that he had already paid all of the medical expenses by the time the case came before the examiner.

While employed by the respondent, claimant was also attending Kansas Wesleyan, where he hoped to obtain his bachelor's degree with an education major. However, he wished to obtain a job with the respondent as an industrial psychologist after he completed his education rather than pursue a teaching career. Claimant was forced to drop several courses during the spring of 1976 due to his back problems, but in April of 1976, he applied for vocational rehabilitation. Dean Rensberger, claimant's vocational rehabilitation counselor in Salina, was apprised that the claimant wanted to teach, probably in an elementary school. Therefore, claimant was allowed to continue to complete his degree requirements at Kansas Wesleyan for his vocational rehabilitation program. Rehabilitation payments covering his books,

supplies and tuition (limited to that amount equal to the fees for a similar course of study in a public institution) were provided claimant until May, 1978. The respondent reimbursed claimant $1,600 which was the amount he had paid for tuition over and above that paid by the vocational rehabilitation agency. Additionally, respondent paid the claimant temporary total disability benefits during his rehabilitation program.

Claimant received his bachelor's degree in the spring of 1978 and was certified to teach in elementary schools and in high school psychology classes. However, according to Linda Harold, the Kansas Wesleyan placement director, claimant did not apply for any teaching positions to her knowledge, and had informed her that he intended to pursue a master's degree at Ohio State University. The claimant admitted that he had not sought any teaching positions. He believed that he would be unable to obtain a job teaching psychology in a secondary school because the opportunities were very limited for a person only qualified to teach psychology, since many Kansas schools did not even offer it as a part of their curriculum. He also did not feel that he could adequately teach elementary school children because he had an English accent which would interfere with effective communications. (Claimant was an immigrant from Africa.) However, Albert Nelson, director of the teacher education program at Kansas Wesleyan; Gene Davis, head of the elementary education program at the college when claimant was a student there and who supervised claimant during his elementary education practice teaching; Linda Harold; and Dean Rensberger agreed that the claimant was qualified as an elementary school teacher. Further, Davis and Rensberger did not believe that claimant's accent would prevent him from obtaining employment with a school district in this state or impair his ability to instruct elementary school-age children.

Drs. Lungstrum and McCrae provided the only medical testimony regarding claimant's condition that was considered during the workmen's compensation proceedings. McCrae, who had last examined claimant in September of 1977 after claimant's back surgery, opined that as of that date claimant had a permanent partial impairment of function of 10% of the body as a whole. He diagnosed that the claimant had "[f]ibrositis, lumbosacral area with slight residual soreness secondary to herniated disc and

subsequent removal of the same." He stated that if the claimant returned to the work he was performing prior to his injury, it would increase the probability of further back problems. However, he believed that claimant was at least physically capable of teaching in an elementary school.

Dr. Lungstrum stated that claimant suffered from a 15% permanent partial disability of the body. During the course of his treatment, Lungstrum variously opined about claimant's future ability to perform heavy or moderate physical labor. His most recent opinion, however, was that claimant should not return to extremely heavy work, but could probably do light work or function physically as an elementary teacher.

Claimant testified that after his accident he had trouble bending and lifting anything weighing twenty to twenty-five pounds or over, and he could not lift that much continuously. He also stated he would be unable to stand at a job for an entire eight hour shift because the pain in his back would be too severe. However, he admitted that he was capable of teaching in an elementary school.

Based upon the foregoing evidence, the examiner on October 24, 1978, found that claimant had a 12½% permanent functional impairment to the body as a whole. He also found that claimant received sufficient vocational rehabilitation services as were reasonably necessary to restore him to substantial and gainful employment as a school teacher by receiving his bachelor's degree in education. Despite this rehabilitation, the examiner found that the claimant was not in a position to retrieve wages lost due to his injury, at least in the immediate future, and, accordingly, found that the claimant's ability to engage in work of the same type and character he was performing at the time of the injury was reduced by 15% and entered a permanent partial general disability rating of 15%. The examiner awarded claimant 141 weeks of temporary total disability at the rate of $103.10 per week for a total of $14,537.10. An award of $18.11 per week for 274 weeks, based upon his 15% permanent partial general disability, in the amount of $4,962.14 for a total of $19,499.24 was also entered. The respondent was ordered to reimburse claimant the sum of $1,600 for tuition costs during his first 52 weeks of approved vocational rehabilitation at Kansas Wesleyan.

Upon review, in an order dated December 28, 1978, the director

sustained the award of the examiner except for that portion regarding the claimant's partial disability. The director determined that the figure had to be computed after considering the impact of claimant's rehabilitation upon his future earnings. Therefore, he found that the claimant had a 25% permanent partial disability and awarded him 274 weeks for his permanent partial general disability at $30.18 per week for a total of $8,269.32. He otherwise sustained the examiner and entered a total award of $22,806.42.

On appeal the trial court adopted that part of the director's order which sustained the examiner's award as its findings, order and judgment except for the director's award of a 25% permanent partial general disability. The trial court found no evidence to support this finding because medical testimony had placed claimant's permanent partial disability at 10% and 15%. Therefore, the trial court determined that claimant suffered a 12½% permanent partial general disability, and awarded him $15.09 per week for 274 weeks based upon that percentage for a total of $4,134.66. A total award of $18,671.76 was entered and the journal entry was filed on September 21, 1979. Claimant appeals.

The crux of this appeal is whether a disability finding, made after an injured workman has successfully completed a vocational rehabilitation program, should be based upon his ability to perform the work for which he has been rehabilitated or upon his ability to engage in work of the same type and character which he was performing at the time of his injury. This question, one of first impression, must be answered by construing K.S.A. 1979 Supp. 44-510g (substantially the same statutory provisions were in effect throughout these proceedings, so the 1979 Supp. will be cited in this opinion), and K.S.A. 1979 Supp. 44-510e. In relevant part, these statutes provide as follows. K.S.A. 1979 Supp. 44-510g(*j*):

"(*j*) At such time as any medical, physical or vocational rehabilitation or reeducation or training has been completed under this section, the employer shall have the right, by the filing of an application with the director, to seek a modification of any award which has been rendered granting any compensation to the employee for any disability. Upon at least twenty (20) days notice by registered mail to all parties, the director shall set the application for hearing and the parties shall present all material and relevant evidence. In the event that the director determines that the employee is rehabilitated medically, physically or vocationally, so that he or she is able to engage in substantial and gainful employment, the director shall cancel any award of compensation for temporary

total or permanent total disability, subject to review and modification pursuant to K.S.A. 1976 Supp. 44-528, and amendments thereto, and shall modify any existing award of partial disability, or, if no such award has been made, the director shall make an award of partial disability, to reflect only such partial disability, if any, as exists at the conclusion of such rehabilitation, reeducation or training. Any award of partial disability made pursuant to this subsection shall be subject to the provisions of K.S.A. 1976 Supp. 44-510d, and amendments thereto, and K.S.A. 1976 Supp. 44-510e, and amendments thereto."

### K.S.A. 1979 Supp. 44-510e(*a*):

"Permanent partial general disability exists when the workman is disabled in a manner which is partial in character and permanent in quality and which is not covered by the schedule in K.S.A. 44-510d, as amended. The extent of permanent partial general disability shall be the extent, expressed as a percentage, to which the ability of the workman to engage in work of the same type and character that he was performing at the time of his injury, has been reduced."

The respondent agrees with the determination made by the director and adopted by the trial court, that 44-510g must be read to mandate that any disability finding entered after successful completion of vocational rehabilitation must be based upon the claimant's ability to perform the work for which he has been rehabilitated. Consequently, respondent argues that the trial court properly entered its 12½% disability rating, based upon the claimant's physical and educational capacity to teach in an elementary school, since his rehabilitation program had consisted of completing degree requirements at Kansas Wesleyan, which provided him the necessary credentials to teach in a Kansas elementary school.

Claimant disagrees with this analysis, however. He asserts that the last sentence in K.S.A. 1979 Supp. 44-510g(*j*), "[a]ny award of partial disability made pursuant to this subsection shall be subject to the provisions of K.S.A. 1976 Supp. 44-510d, and amendments thereto, and K.S.A. 1976 Supp. 44-510e, and amendments thereto," requires a strict, literal application of the cited section. As claimant's back injury is not a scheduled injury, only the provisions of K.S.A. 1979 Supp. 44-510e are applicable. Accordingly, a finding that a disability percentage after rehabilitation must be based upon the claimant's ability to return to work of the same type and character he was performing when he suffered his compensable injury is compelled. As claimant's former work could be characterized as "heavy labor" and as there was medical testimony that claimant could not return to such work, he claims

an entitlement to a finding of 100% permanent partial general disability.

We turn first to the rehabilitation provisions of the Kansas Workmen's Compensation Act. 44-510g did not become effective until July 1, 1974. The primary purpose for the rehabilitation program is set out in 44-510g(a): "[T]o restore the injured employee to substantial and gainful employment." An injured employee is entitled to physical rehabilitation services that are reasonably necessary to restore him or her to such employment. 44-510g(c). Rehabilitation is not limited to a program that will return the injured workman to the same work he was performing at the time he sustained his compensable injury, but is available whenever he can be rehabilitated to engage in any substantial and gainful employment. An employee may qualify for rehabilitation when he is "unable to perform work for which he or she has previous training, education, qualifications or experience, or when he or she is unable to perform other substantial and gainful employment . . . ." 44-510g(d). The statute prescribes those situations in which the employer will be responsible for rehabilitation expenses, and those which will be provided by other public agencies at no cost to the employer. 44-510g(e), (f). During any period of vocational rehabilitation, reeducation or training, the employer must pay temporary total disability compensation to the employee as computed under 44-510c.

44-510g(i) authorizes the director to suspend any compensation to an employee who is entitled to compensation for permanent total disability or partial disability, or any other disability under the act, whenever it is determined that there is a reasonable probability that rehabilitation, reeducation or training may enable the employee to become substantially and gainfully employed or achieve an increased earning capacity, and the employee, without good cause, refuses the rehabilitation or refuses to be evaluated for rehabilitation. Further, if the refusal persists for longer than 90 days, the director is required to cancel any compensation otherwise payable.

44-510g(j) affords the employer the right to seek a modification of any compensation award which has been rendered after rehabilitation has been completed, and provides the mechanism for doing so. Any award of temporary total or permanent total disability shall be cancelled, subject to the modification provisions

of 44-528, if the director determines that after rehabilitation the workman is able to engage in substantial and gainful employment. The most relevant portion with respect to this action states that the director *shall modify* any existing award of partial disability *or if none exists, shall make an award of partial disability* "to reflect only such partial disability, if any, as exists at the conclusion of such rehabilitation . . . ." *Further, any such award is subject to the provisions of 44-510e.* (Emphasis added.)

44-510e sets forth the method of computing an award for temporary partial or permanent partial general disability, which may not exceed a maximum of 415 weeks. The key provision upon which the claimant relies states that the permanent partial disability is to be expressed as a percentage, which represents the reduction of the workman's ability to engage *in work of the same type and character which he was performing when the injury occurred.*

The paramount rule of statutory construction to which all others are subordinate is that the intent of the legislature must govern whenever the intent may be ascertained from the statute. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). Intent must be gleaned from a general consideration of the statute as a whole, *State v. V.F.W. Post No. 3722,* 215 Kan. 693, 527 P.2d 1020 (1974), and courts may not consider only an isolated part or parts of an act, but must construe all parts *in pari materia, Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, 544 P.2d 791 (1975), with a view towards reconciling, harmonizing, and effectuating the entire statute whenever reasonably possible, *Easom v. Farmers Insurance Co.,* 221 Kan. 415, 560 P.2d 117 (1977). If a literal interpretation of an act contravenes the manifest purpose of the legislature, the entire act should be read according to its spirit and reason, disregarding the strict letter of the law so far as necessary. *Brown v. Keill,* 224 Kan. 195; *State v. Dumler,* 221 Kan. 386, 559 P.2d 798 (1977).

Additionally, the Workmen's Compensation Act is to be liberally construed to award compensation to the workman whenever that is reasonably possible, and further to make the legislative intent effective and not to nullify it. *Brinkmeyer v. City of Wichita,* 223 Kan. 393, 396, 573 P.2d 1044 (1978), and cases cited therein.

We commence our inquiry into the proper construction to be

afforded K.S.A. 1979 Supp. 44-510g by briefly examining the scheme of benefits under the Workmen's Compensation Act. The various provisions of the act evince a statutory design to make an injured workman whole to the extent that is possible. For example, 44-510 mandates compensation for medical treatment necessitated by the injury. 44-510c provides compensation for those totally unable to engage in any type of substantial or gainful employment on a temporary or permanent basis as a result of a work-related injury. 44-510d compensates scheduled injuries reflecting permanent partial disabilities. 44-510e provides compensation for temporary partial or permanent partial general disabilities not encompassed within the schedule of 44-510d.

44-510g then provides but another type of benefit for those injured workmen who possess the requisite qualifications prescribed therein. These rehabilitative benefits are in addition to the benefits to which a workman is otherwise entitled under the act, although some provisions of 44-510g modify those other benefits. See, *e.g.*, 44-510g(*g*), (*i*), and (*j*).

Recalling the principles reviewed above regarding statutory construction and the construction of the Workmen's Compensation Act, we must now consider the provisions of 44-510g(*j*) which authorize an award of partial disability to an injured workman who has successfully completed a rehabilitation program. We find that the last sentence of 44-510g(*j*), which states that any award of partial disability made thereunder "shall be subject to the provisions of . . . K.S.A. 1976 Supp. 44-510e, and amendments thereto," must be strictly followed. Therefore, we hold that an award of partial disability made at the conclusion of a successful rehabilitation program must be computed as provided in 44-510e. That is, the award of partial disability must reflect the extent, after successful rehabilitation, that the injured workman's ability to perform work of the same type and character he was performing when injured, has been reduced. By so concluding, we therefore reject the argument of the respondent that such an award must be based upon the injured workman's ability to perform that work for which he has been rehabilitated.

As the undisputed medical evidence demonstrated that the claimant was permanently unable to engage in work of the same type and character he was performing at the time of his injury, even after rehabilitation, the judgment of the district court is

reversed and the case is remanded for reconsideration as to the percentage of disability in accordance herewith.

In view of our decision, we find it unnecessary to address the other contentions raised by the claimant.

Judgment of the trial court is reversed and remanded.