(660 P.2d 78)
No. 54,316

Mark V. Cowan, *Appellant*, v. Josten's American Yearbook Company and Federated Mutual Insurance Company, *Appellees.*

Opinion filed March 10, 1983.

*George E. McCullough, Reginald LaBunker* and *Gary R. Terrill*, of McCullough, Wareheim & LaBunker, of Topeka, for appellant.

*John A. Bausch*, of Ascough, Bausch, Eschmann, P.A., of Topeka, for appellees.

Before Foth, C.J., Spencer and Parks, JJ.

Parks, J.: This is a workers' compensation claim brought by Mark Cowan seeking compensation for the period he was engaged in a program of vocational rehabilitation. This claim is in addition to and independent from his right to receive compensation for his scheduled injury under K.S.A. 44-510d. The district court ruled that claimant was not entitled to the additional compensation. Claimant appeals.

While working as a summer employee for the respondent Josten's American Yearbook Company, the claimant suffered an injury on July 5, 1978. Claimant's left hand was injured to the extent that it was amputated above his left wrist. According to Dr. Sutton, claimant's arm had healed and was functional by September 4, 1980, but it was his opinion that claimant would never be expected to return to the type of employment that he was engaged in at the time of his injury. Dr. Duncan also examined the claimant and testified that claimant's left extremity is, for all practical purposes, useless.

As a result, claimant was referred to and found to be in need of vocational rehabilitation in order to return to the employment market. This decision was not challenged by the respondent. The program developed by the Kansas Division of Vocational Rehabilitation provided claimant would attend Kansas State University. The Division paid for claimant's tuition and books but, except for $44 per month in Social Security disability ben-

efits, claimant received no funds from any state or other governmental agency for subsistence.

The respondent paid temporary total disability compensation to the claimant from the date of his accident, July 5, 1978, until January 28, 1981. On November 4, 1981, the administrative law judge found that claimant was entitled to 200 weeks of compensation for his scheduled injury and in addition was entitled to 15 weeks for a healing period under K.S.A. 44-510d(*b*). Although the judge found that claimant was prohibited from receiving any additional compensation for his scheduled injury, he ruled that claimant was eligible for separate vocational rehabilitation benefits and that the respondent was obligated to pay temporary total disability compensation during the period of rehabilitation. The director and the trial court disagreed with that portion of the award which allowed compensation for the rehabilitation period.

The sole issue is whether the provisions of K.S.A. 44-510d(*b*) prohibit the recovery of compensation allowable under K.S.A. 44-510g(*g*) as additional benefits. These statutes read as follows:

"Whenever the employee is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in K.S.A. 44-510 and amendments thereto, and no additional compensation shall be allowable or payable for either temporary or permanent disability, except that the director may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than ten percent (10%) of the total period allowed for the scheduled injury in question nor in any event for longer than fifteen (15) weeks. The return of the employee to his or her usual occupation shall terminate the healing period." K.S.A. 44-510d(*b*).

"The employer shall pay temporary total disability compensation during any period of vocational rehabilitation, reeducation or training, computed as provided in K.S.A. 44-510c, and amendments thereto, but the employer shall receive credit for any weekly, monthly or other monetary payments made to the employee or such employee's family by any state, federal or other public agency during any such period, exclusive of any such payments for the board, lodging, and travel expenses of the employee." K.S.A. 44-510g(*g*).

The position taken by the district court and the director and defended by the respondent on appeal, is that the total amount of compensation due a worker who receives a scheduled injury is determined by K.S.A. 44-510d(*b*). This statute states that the scheduled benefits "shall be exclusive of all other compensation" except medical payments and that "no additional compensation shall be allowable or payable for either temporary or permanent disability." The compensation provided by K.S.A.

44-510g(*g*) is termed temporary total disability benefits. Thus, the district court held that any payments made while the worker is undergoing vocational rehabilitation must count against the total number of weeks of compensation due the worker under the schedule.

The claimant contends that K.S.A. 44-510g(*g*) places a duty upon the employer to pay compensation during rehabilitation independent of the maximum number of weeks of compensation specified for a scheduled injury. Claimant rests his argument on the distinction between the goals of temporary total compensation for a scheduled injury and those sought to be achieved by requiring rehabilitative training benefits. Claimant argues that the scheduled benefits under K.S.A. 44-510d are intended to compensate an injured worker for loss of wages during the healing period in the same manner as temporary total disability compensation under K.S.A. 44-510c. *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 443, 625 P.2d 453 (1981). The purpose of vocational rehabilitation payments is to enable a worker to receive the education or training needed to restore him to substantial and gainful employment. K.S.A. 44-510g(*a*). These payments are mandatory if a worker is unable to perform work for which he had previous training, education, qualification or experience (K.S.A. 44-510g[*d*]) and are not predicated on proof of a temporary total disability or the need for time to heal. Thus, claimant maintains that vocational rehabilitation benefits were not intended to be encompassed by the provision of K.S.A. 44-510d(*b*) which excludes all compensation other than medical benefits and that amount set out in the schedule of compensation.

Both parties rely upon the only case which has construed K.S.A. 44-510g. In *Antwi v. C-E Industrial Group,* 5 Kan. App. 2d 53, 57, 612 P.2d 656, *aff'd* 228 Kan. 692, 619 P.2d 812 (1980), this court considered whether an award of partial disability following rehabilitation must reflect either the worker's ability to perform the work for which he has been rehabilitated or his ability to engage in work of the same type and character which he was performing at the time of his injury. The court's conclusion that the latter condition controlled turned on a literal interpretation of K.S.A. 44-510g(*j*) which stated that any award of partial disability following rehabilitation "shall be subject to the

provisions of . . . K.S.A. 1976 Supp. 44-510e, and amendments thereto." K.S.A. 44-510e states that permanent partial disability is to be expressed as a percentage which reflects the reduction in the worker's ability to engage in work of the same type and character which he was performing when the injury occurred.

Claimant points to language in *Antwi* which appears to support his characterization of rehabilitation benefits as separate and different from temporary and permanent compensation. *Antwi*, 5 Kan. App. 2d at 61. However, the ultimate conclusion of *Antwi* was that the imposition of rehabilitation did not alter the means of calculating the limits to compensation for a general disability. Since the provision interpreted in *Antwi* also refers to scheduled benefits under K.S.A. 44-510d, respondent contends that the limit calculated by the legislature on benefits for a scheduled injury should also remain unchanged by rehabilitation of the worker.

Although *Antwi* was concerned with the role of vocational rehabilitation in our workers' compensation scheme, it did not consider the interplay of rehabilitation *benefits* and the various types of disability compensation. *Antwi* posed a narrow question and indeed only considered the issue of post-rehabilitation disability benefits for a general disability and not a scheduled injury. To determine the effect of rehabilitation payments on the compensation received for a scheduled disability, we must construe the applicable statute.

The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. In determining legislative intent the court may properly look to the purpose to be accomplished, and the necessity and the effect of the statute. *Kansas State Board of Healing Arts v. Dickerson*, 229 Kan. 627, 630, 629 P.2d 187 (1981). When the statute involved concerns workers' compensation, our courts are committed to making legislative intent effective by liberally construing the act to award compensation to the worker whenever that is reasonably possible. *Brinkmeyer v. City of Wichita*, 223 Kan. 393, 396, 573 P.2d 1044 (1978). However, if a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed rather than determine what

the law should or should not be. *Johnson v. McArthur*, 226 Kan. 128, 135, 596 P.2d 148 (1979); *Brinkmeyer*, 223 Kan. at 397.

K.S.A. 44-510d(*b*) clearly directs that compensation paid for a specific injury under the schedule shall be *exclusive of all other compensation except the benefits* (medical compensation) *provided in K.S.A. 44-510*. In addition, K.S.A. 44-510d(*a*) specifies the types of compensation which may be awarded as including medical benefits provided in K.S.A. 44-510, temporary total compensation for loss of use and compensation for any permanent disability which finally results. The disability dates from immediately after injury and a maximum number of weeks of compensation is set. Thus, any weeks of temporary total benefits count against the total number of weeks of benefits allowed. See *McKinney v. Rodney Milling Co.*, 177 Kan. 401, 403-04, 279 P.2d 221 (1955). Since payments due during vocational rehabilitation are designated in K.S.A. 44-510g(*g*) as temporary total compensation, there is no indication that these payments are to be treated differently than other temporary total benefits. Finally, had the legislature intended that payments for vocational rehabilitation be in addition to that provided for a scheduled injury, it could have done so by simply stating that the payments under K.S.A. 44-510g(*g*) would be excepted along with the benefits provided in K.S.A. 44-510. In the absence of such an amendment or a similar amendment allowing compensation in addition to that provided for a scheduled injury, we must give effect to the intention of the legislature as expressed in the statute rather than rewrite the legislation.

We recognize that inequities may result from this construction of the act. For example, a worker may be in the midst of rehabilitation when compensation for his scheduled injury expires. He would then be without the funds necessary to complete his rehabilitation but not yet capable of obtaining gainful employment. The purpose of the vocational rehabilitation program would be defeated by such a case but, in our opinion, this matter should be addressed by the legislature rather than the court.

We conclude that when a disability stems from a scheduled injury, compensation paid during vocational rehabilitation under K.S.A. 44-510g(*g*) is counted against, and is not independent of, the total compensation due under K.S.A. 44-510d.

Affirmed.