(742) P.2d 441)

No. 60,088

DONNA MURDOCK, *Claimant-Appellee,* v. MBPXL CORPORATION, *Respondent-Appellant.*

Petition for review denied November 13, 1987.

Opinion filed September 10, 1987.

*Stephen M. Kerwick*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellant.

*Randy S. Stalcup*, of Wellington, for the appellee.

Before BRISCOE, P.J., RICHARD W. WAHL, District Judge, assigned, and HARRY G. MILLER, District Judge Retired, assigned.

WAHL, J.: Respondent MBPXL Corporation appeals from an order of the district court assessing the costs of claimant's vocational rehabilitation against respondent and ordering it to repay a government educational grant.

This is the second appeal in this workers' compensation case. The action was originally initiated when claimant brought a workers' compensation claim for right wrist and forearm disability that arose on approximately September 4, 1979. Claimant's injury was the result of repeated cyclic activity in trimming meat with a boning knife, her designated job with respondent, a meat packing operation.

On September 9, 1982, the administrative law judge (ALJ) granted benefits according to the scheduled injury statute, finding that claimant had a 20 percent permanent partial loss of use of her right forearm. Claimant was awarded $8,224.36 in temporary total disability payments, $4,275.72 for the 20 percent permanent partial loss of use of the forearm, and all medical expenses incurred as a result of the injury. Claimant's request for vocational rehabilitation benefits was denied based on the state of the record at that time.

Claimant appealed the award to the district court. In a memorandum opinion filed January 26, 1983, the district court framed the issues raised as: (1) whether the claimant's injury was a personal injury by accident or an occupational disease; and (2) whether the claimant was entitled to vocational rehabilitation. The court upheld the administrative decision as to the nature and amount of the disability award, but reversed the denial of claimant's request for vocational rehabilitation and ordered that an appropriate plan be developed.

Thereafter, claimant filed a motion for reinstatement of temporary total benefits during rehabilitation and requested payment of compensation in one lump sum. On March 9, 1983, the court ordered that claimant receive temporary total benefits once she was enrolled in an approved program. Another unsigned order, also dated March 9, 1983, which was apparently a proposed journal entry drafted by claimant's attorney, further clarified that (1) the plan for rehabilitation was to be devised with representatives of the Vocational Rehabilitation Director; (2) the

plan was to be furnished to both parties' attorneys as well as the Director; and (3) either party could seek a hearing before the Director should a disagreement arise as to the rehabilitation plan. Both parties stipulate that the unsigned journal entry dated March 9, 1983, correctly states the orders of the district court.

On February 11, 1983, claimant appealed to this court contending the trial court erred in its finding that she suffered disability as a result of accidental injury rather than occupational disease. No cross-appeal was taken by respondent. An unpublished Court of Appeals opinion affirmed the district court decision (No. 55,433, filed September 22, 1983).

The last money due and owing claimant was paid on February 17, 1983. Claimant delivered a child in July 1983 and remained at home with her child until May 1985, when she sought a vocational assessment through the Wichita Vocational Assessment Center in preparation for entering a retraining program. Claimant was referred to the Wichita Center for an assessment of the functional limitations of her hands and the feasibility of medical assistant training. At that time, claimant stated her medical doctor had indicated she could not work as a medical lab assistant. Claimant experienced problems with swelling and numbness in her right hand when completing tasks requiring manual dexterity. The assessor failed to make a dispositive recommendation but indicated claimant would need to consider the functional limitations of her hands before entry into training for employment requiring good dexterity skills.

On October 7, 1985, claimant entered into a medical assistant training program at Bryan Institute in Wichita. She financed the program with a $2,295 guaranteed student loan and a $2,400 federal "Pell Grant." On December 2, 1985, claimant filed a motion with Workers' Compensation for costs of vocational rehabilitation and temporary disability benefits during the period of training. On December 18, 1985, respondent filed a formal objection.

On March 11, 1986, after conducting an evidentiary hearing and reviewing the briefs of both parties, the ALJ entered an award denying claimant vocational rehabilitation benefits. The award stated that, although claimant had good cause for delaying her entry into retraining, she failed to meet the conditions set by

the district court in its March 9, 1983, order. The award noted claimant had failed to obtain approval of the program from the vocational rehabilitation counselors, respondent's counsel, or the ALJ. The ALJ further found that claimant had previously indicated she could not be a medical assistant because of medical restrictions and because her problem with manual dexterity prevented her from competently handling medical equipment. The ALJ concluded it was not the lack of administrative approval that defeated claimant's request, but that she entered into a medical assistant vocational program against medical advice and with knowledge that she could not consistently perform the tasks attendant upon the job without difficulty. No review of the award was requested and it was approved by the Director of Workers' Compensation on March 24, 1986.

On March 28, 1986, claimant filed a notice of appeal to the district court. On June 27, 1986, the district court found that claimant's delay in entering a vocational rehabilitation program was justifiable and approved claimant's retraining program as consistent with her vocational evaluation. The court noted that the evaluation stated claimant had a reading comprehension grade level of 12.9, a high average ability to handle small materials, and satisfactory basic skills. Respondent was ordered to repay claimant the $2,295 for her student loan and to repay claimant's Pell Grant in the amount of $2,500. Claimant's request for temporary total compensation during training was denied in light of *Cowan v. Josten's American Yearbook Co.*, 8 Kan. App. 2d 423, 660 P.2d 78, *rev. denied* 233 Kan. 1091 (1983).

Claimant requested additional attorney fees but the request was denied. After a final hearing on August 7, 1986, a journal entry of judgment on the entire matter was filed on September 10, 1986. On August 25, 1986, respondent filed a timely notice of appeal with this court. On September 8, 1986, claimant filed a notice of cross-appeal, which she has now withdrawn.

As a preliminary jurisdictional matter, claimant contends respondent's failure to take a timely cross-appeal in the original 1983 appeal precludes this court from addressing respondent's vocational rehabilitation entitlement issues on this appeal. Respondent's position is that the district court's original judgment on vocational rehabilitation did not become appealable until the

court entered a detailed order ruling on claimant's plan and expenses, and a cross-appeal in the original action would have been premature.

Claimant's contention is without merit. Respondent challenges subsequent orders issued by the district court. Respondent's failure to challenge claimant's basic entitlement to vocational rehabilitation on the first appeal does not preclude challenging later orders involving the specific implementation of the vocational rehabilitation award and the designation of expenses on this appeal. The issues raised by respondent had not yet ripened at the time of the prior appeal.

Turning to the merits of this appeal, we must consider whether claimant's request to have her training expenses paid is barred by the exclusivity provision of K.S.A. 44-510d(b), which provides:

"Whenever the employee is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation except the benefits provided in K.S.A. 44-510 and amendments thereto, and no additional compensation shall be allowable or payable for either temporary or permanent disability, except that the director may, in proper cases, allow additional compensation during the actual healing period, such period not to be more than ten percent (10%) of the total period allowed for the scheduled injury in question nor in any event for longer than fifteen (15) weeks. The return of the employee to his or her usual occupation shall terminate the healing period."

Respondent contends that this court's holding in *Cowan v. Josten's American Yearbook Co.*, 8 Kan. App. 2d 423, is controlling. In *Cowan*, the claimant sought compensation for the period he was engaged in a program of vocational rehabilitation in addition to and independent of his right to receive compensation for his scheduled injury under K.S.A. 44-501d. This court held, when a disability stems from a scheduled injury, compensation paid during vocational rehabilitation under 44-510g(g) is counted against, and is not independent of, the total compensation due under 44-501d.

K.S.A. 44-510g is a comparatively new statute, having been enacted in 1974. It was considered in *Antwi v. C-E Industrial Group*, 5 Kan. App. 2d 53, 612 P.2d 656, *aff'd* 228 Kan. 692, 619 P.2d 812 (1980). *Antwi* focused on the issue of whether a disability finding, made after an injured workman had successfully completed a vocational rehabilitation program, should be based

upon his ability to perform the work for which he had been rehabilitated or upon his ability to engage in work of the same type and character which he was performing at the time of his injury.

Neither *Antwi* nor *Cowan* addressed the issue before us — when a disability stems from a scheduled injury, are the costs of vocational rehabilitation training paid under K.S.A. 44-510g(d) counted against or are those costs independent of the total compensation paid under 44-510d? We must then construe the statutes and determine if we can ascertain the legislative intent. We are mindful of our mandate to look to the purpose to be accomplished by the statute (*Kansas State Board of Healing Arts v. Dickerson*, 229 Kan. 627, 630, 629 P.2d 187 [1981]), and, in workers' compensation matters, to make the legislative intent effective by liberally construing the act to award compensation and benefits to the worker whenever reasonably possible (*Brinkmeyer v. City of Wichita*, 223 Kan. 393, 396, 573 P.2d 1044 [1978]).

K.S.A. 44-510g(a) states: "A primary purpose of the workmen's compensation act shall be to restore the injured employee to substantial and gainful employment." K.S.A. 44-510g(d) provides:

"When as a result of an injury or occupational disease which is compensable under the workmen's compensation act, the employee is unable to perform work for which such employee has previous training, education, qualifications or experience, or when such employee is unable to perform other substantial and gainful employment, such employee shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore such employee to substantial and gainful employment and as provided in this section."

K.S.A. 44-510g(g) directs: "The employer shall pay temporary total disability compensation during any period of vocational rehabilitation."

K.S.A. 44-510d(a) and (b) and 44-510g(g) speak in terms of *compensation* to be paid for specific injuries and temporary total disability *compensation* to be paid during the period of vocational rehabilitation. K.S.A. 44-510g(d) speaks of a compensable injury for which the employee is entitled to *vocational rehabilitation services*, including retraining, which *services* are to be

provided at the *expense* of the employer. A clear distinction is made between compensation and vocational rehabilitation costs. As stated in *Clintsman v. St. Joseph Hosp. of Concordia*, 11 Kan. App. 2d 199, 203, 717 P.2d 1074 (1986), "The entire thrust of the rehabilitation provisions of the Workmen's Compensation Act is on training."

By the very tenor and stated purpose of the vocational rehabilitation provisions, the legislature evinces a clear purpose to provide the vocational training in addition to the compensation for a specific injury. Although not necessary to the decision, in *Antwi*, 5 Kan. App. 2d at 61, the same conclusion was reached: "These rehabilitative benefits are in addition to the benefits to which a workman is otherwise entitled under the act."

The district court in the present case did not err in limiting the application of *Cowan* to bar only claimant's request for additional temporary total compensation during her vocational training course. The costs of such rehabilitative training may not be set off against the total compensation award and are not barred by the exclusivity provision of K.S.A. 44-510d.

Respondent next contends the district court erred in authorizing claimant's vocational retraining program because claimant was found to be physically unsuited to work as a medical assistant, engaging in such occupation would violate medical restrictions, and she undertook retraining without the prior recommendation or approval of the Vocational Assessment Center.

Claimant had been medically informed that her injury made her unsuitable for medical assistant training. She was directed by the district court to consult a vocational rehabilitation counselor and to submit a plan, and each party would then have the right to a hearing before the Vocational Rehabilitation Director should a disagreement arise as to the plan. She was referred to the Wichita Vocational Assessment Center to determine the functional limitations of her hands and the feasibility of medical assistant training. The propriety of the trial court's order becomes apparent when the results of claimant's examination are considered. This assessment showed her highest occupational interest to be in the business and service area. She scored an "unsatisfactory" on measuring where the use of a ruler was required to measure inches and fractions of inches. She had a weak math score and

had a "[l]ow average accuracy in work—lack of attention to detail." The only reference to medical assistant training was a question by the evaluator about the area of medical lab assistant and claimant indicated, "My medical doctor said that's out." The vocational assessment report dated June 7, 1985, neither recommended nor disapproved the medical assistant training chosen by claimant.

Even recognizing the primary purpose of the Act to restore the injured employee to substantial and gainful employment, the worker may not unilaterally decide what training he or she may want to pursue and proceed to do so at respondent's expense. Claimant entered her medical assistant training without approval of the vocational rehabilitation counselors, against medical advice, and without following the orders of the district court. To approve such an independent approach to rehabilitation training by a claimant would result in untold administrative and economic chaos and a total breakdown of the legislatively intended benefits to the injured worker of rehabilitation training. K.S.A. 44-510g(i) makes provision for the possibility that the worker may not follow the orderly process to rehabilitation training, as follows:

"[I]f the injured employee without good cause refuses to undertake the rehabilitation, educational or training program determined by the director to be suitable for such employee, or refuses to be evaluated under the provisions of subsection (e), the director shall suspend the payment of any compensation until the employee consents to undertake such program or to be so evaluated, and the director shall cancel the compensation otherwise payable if any such refusal persists for a period in excess of 90 days."

If compensation may be cancelled for refusal to undertake rehabilitation, it is no injustice to deny retraining costs for failure to follow instructions.

The trial court erred in ordering respondent to repay claimant for her $2,295 student loan. Claimant's motion for rehabilitation benefits should be denied.

Counsel agreed at oral argument before this court that the trial court lacked authority to order respondent to repay the $2,400 federal educational Pell Grant which claimant had obtained. K.S.A. 44-510g(h) specifically prohibits such reimbursement:

"The director shall cooperate with federal, state and other public or private

agencies for vocational rehabilitation, reeducation or training, or medical or physical rehabilitation. The employer shall not be required to pay the reasonable costs of the employee's board, lodging and travel where such costs are borne by any federal, state or other public agency, nor shall any costs for vocational rehabilitation, reeducation or training be assessed to the employer if such vocational rehabilitation, reeducation or training is in fact furnished by and at the expense of any federal, state or other public agency."

The order of the district court is reversed and judgment shall be entered in accordance herewith.