(215 P.3d 643)
No. 100,814

JOSEPH BARBURY, *Appellant*, v. DUCKWALL ALCO STORES, INC., and LIBERTY MUTUAL INSURANCE CO., *Appellees*.

Opinion filed September 18, 2009.

*Jeff K. Cooper* and *Gary M. Peterson*, of Topeka, for appellant.

*Andrew D. Wimmer*, of Law Offices of Stephanie Warmund, of Overland Park, for appellees.

Before RULON, C.J., GREENE and LEBEN, JJ.

LEBEN, J.: Joseph Barbury was off work for nearly 90 weeks after being injured on the job, and he received temporary-total-disability payments for that time period. When he returned to work, he received a permanent-partial-disability award for just over 110 weeks, which reflected the statutorily scheduled 200 weeks for his injury after subtracting the nearly 90 weeks he had received for temporary benefits. Barbury claims that his permanent award should have

been for 200 weeks, without the reduction for his temporary benefits. But the director of workers compensation has adopted a regulation that provides that the weeks of temporary benefits are to be deducted. See K.A.R. 51-7-8(b)(1). Administrative regulations have the force of law and are presumed valid, and this regulation is consistent with the applicable statutes. We therefore affirm the decision of the Workers Compensation Board that the number of weeks for which temporary benefits have been paid·must be deducted from the number of weeks listed by statute for a scheduled injury when calculating a permanent award.

We only have one issue on appeal: whether the number of weeks of temporary-benefit payments should be deducted from the scheduled number of weeks to be paid in a permanent-partial-disability award. Accordingly, we will not set out the facts of Barbury's case in any detail; the parties are well familiar with them, and the factual details of this case do not affect the issue we must decide.

Barbury concedes that if this case is governed by K.A.R. 51-7-8(b)(1), an administrative regulation, the number of temporary weeks must be deducted. K.A.R. 51-7-8(b)(1) makes that point clearly:

> "If a loss of use occurs to a scheduled member of the body, compensation shall be computed as follows:
>
> (A) deduct the number of weeks of temporary total compensation from the schedule;
>
> (B) multiply the difference by the percent of loss or use to the member; and
>
> (C) multiply the result by the applicable weekly temporary total compensation rate."

Barbury argues, however, that the regulation is invalid.

When an administrative agency is authorized to adopt regulations, those regulations are presumed valid, and the party who challenges them has the burden to show their invalidity. To be valid, the regulations must be within the agency's statutory authority, and they must be appropriate, reasonable, and consistent with the underlying statutes. *In re Tax Appeal of City of Wichita*, 277 Kan. 487, 495, 86 P.3d 513 (2004).

The regulation at issue here was adopted by the director of workers compensation, who has statutory authority to issue any regulations he or she deems necessary to administer and enforce the Kansas Workers Compensation Act. See K.S.A. 44-573 and K.S.A. 74-717. The Workers Compensation Board rejected Barbury's argument, concluding that K.A.R. 51-7-8(b)(1) was a valid regulation. By ruling the regulation a valid one, the Board implicitly concluded that it was consistent with the applicable statutes.

To what extent should our result be influenced by the Workers Compensation Board's interpretation of the statutes at issue? For many years, the Kansas Supreme Court said that the Board's interpretation of workers'-compensation statutes, though not binding on the courts, was "entitled to judicial deference if there is a rational basis for the Board's interpretation." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 521, 154 P.3d 494 (2007). Accord *McIntosh v. Sedgwick Co.*, 282 Kan. 636, 641, 147 P.3d 869 (2006); *Foos v. Terminix*, 277 Kan. 687, 692-93, 89 P.3d 546 (2004); *Roberts v. J.C. Penney Co.*, 263 Kan. 270, 274, 949 P.2d 613 (1997). More recently, however, our Supreme Court has noted that it has been "reluctant" to defer to an agency in statutory interpretation when the facts of a case are undisputed, *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007), and the Supreme Court has concluded that "[n]o significant deference is due the . . . Board's interpretation or construction of a statute." *Higgins v. Abilene Machine, Inc.*, 288 Kan. 359, 361, 204 P.3d 1156 (2009).

To decide this case, we need not dwell on the level of deference we should give to the Board's statutory interpretation. It would certainly be easy, under the rational-basis standard stated in *Casco* and the other cited cases, to conclude that the Board's interpretation had a rational basis: To the extent that any legitimate ambiguity exists in the statutes and regulation, the Board's implicit conclusion that the regulation was consistent with the underlying statutes is a reasonable one. But we also conclude that the view set out in the regulation is the most logical and appropriate reading of the underlying statutes too.

We must review three statutes in some detail. K.S.A. 44-510c sets out the rules for paying benefits to a worker who is totally disabled, whether temporarily or permanently. K.S.A. 44-510d provides for compensation for workers who are permanently, but not totally, disabled and who have an injury specifically listed in the statutory schedule. K.S.A. 44-510e provides for compensation of workers who are partially disabled—whether temporarily or permanently—but this section only covers permanent injuries that are not listed in the schedule found in K.S.A. 44-510d.

Because Barbury received temporary-total-disability benefits followed by an award for a scheduled permanent-partial disability, his situation is governed by K.S.A. 44-510c and K.S.A. 44-510d. K.S.A. 44-510c(b)(1) provides that he receive weekly payments during temporary total disability but that no compensation generally is paid during the first week of disability, except for medical benefits. "Thereafter weekly payments shall be made during such temporary total disability." K.S.A. 44-510c(b)(1). Once the employee returns to work or is released from treatment, temporary-total-disability payments are then suspended, but the employee still receives compensation for a partial disability under either K.S.A. 44-510d, for scheduled injuries (like the loss of an arm, a hand, or a leg), or K.S.A. 44-510e, for nonscheduled injuries. K.S.A. 44-510c(b)(3). The statute we have been discussing for temporary-total-disability payments concludes by stating that whenever a total permanent or temporary disability is followed by a partial disability, "compensation shall be paid as provided in K.S.A. 44-510d and 44-510e . . . ." K.S.A. 44-510c(c).

The parties agree with the Board's finding that Barbury had partial-disability injuries to each leg and that the schedule in K.S.A. 44-510d provides a maximum benefit of 200 weeks for each leg injury. Like K.S.A. 44-510c, K.S.A. 44-510d begins by noting that no compensation is generally paid during the first week of disability, except for medical benefits. K.S.A. 44-510d(a). The statute then provides for payment under the schedule where employees receive two-thirds of their average weekly wage up to certain limits. The employee may not receive *any* other compensation, however, except medical benefits that cover treatment costs:

"Thereafter compensation shall be paid for temporary loss of use and as provided in the following schedule, 66⅔% of the average gross weekly wages . . . , except that in no case shall the weekly compensation be more than the maximum as provided for in K.S.A. 44-510c . . . . If there is an award of permanent disability as a result of the injury there shall be a presumption that disability existed immediately after the injury and compensation is to be paid for not to exceed the number of weeks allowed in the following schedule." K.S.A. 44-510d(a).

"*Whenever the employee is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation* except the [medical] benefits provided in K.S.A. 44-510h and 44-510i . . . , and no additional compensation shall be allowable or payable for any temporary or permanent, partial or total disability, except that the director, in proper cases, may allow additional compensation during the actual healing period, following amputation." (Emphasis added.) K.S.A. 44-510d(b).

So what do these two statutes—the ones that explicitly apply to Barbury—tell us about how many weeks of benefits he may receive? K.S.A. 44-510c allowed him to receive temporary-total-disability compensation, but it also provided that "compensation shall be paid as provided in K.S.A. 44-510d and 44-510e" when a permanent temporary disability is followed by a partial disability. The statute that applies to scheduled injuries like Barbury's, K.S.A. 44-510d, provides that the disability for which the employee is being compensated is presumed to have "existed immediately after the injury," which means that compensation for the entirety of the injury is at issue under K.S.A. 44-510d. The statute then provides that the compensation should not "exceed the number of weeks allowed in the . . . schedule." And K.S.A. 44-510d(b) provides that whenever the employee receives compensation for a scheduled injury, "the same shall be exclusive of all other compensation" except medical benefits. In our view, the legislature has set an overall compensation limit for a scheduled injury to the leg of 200 weeks, part of which may have been provided as a temporary-total-disability compensation under K.S.A. 44-510c. Although K.S.A. 44-510c lets the employee receive temporary-total-disability compensation, it defers to K.S.A. 44-510d to determine compensation when a permanent scheduled injury follows a temporary total disability. And K.S.A. 44-510d explicitly provides that the compensation provided there "shall be exclusive of all other compensation" except medical benefits and amputation cases.

Barbury's best argument to the contrary is based on the language of the third statute we mentioned earlier, K.S.A. 44-510e. That statute applies when determining an unscheduled permanent-partial-disability award. It provides a step-by-step way to calculate that award, specifically noting that the total number of weeks of temporary-total-disability payments must be subtracted from the maximum number of weeks allowed. K.S.A. 44-510e(a). But there's a logical reason why K.S.A. 44-510e might have been structured differently than K.S.A. 44-510d: K.S.A. 44-510e provides for coverage of both temporary and permanent awards for partial disabilities, while K.S.A. 44-510d applies only to permanent awards. Thus, it seems logical to put something explicit in K.S.A. 44-510e(a) about subtracting the number of weeks of temporary benefits from the total weeks to be used in the compensation formula when that statutory subsection, K.S.A. 44-501e(a), provides for both the temporary award for a partial disability and the permanent award.

K.S.A. 44-510d applies only to permanent awards for partial disabilities. It also seems logical that determining how to account for any temporary-disability payments in cases in which the permanent award is governed by K.S.A. 44-510d would require consideration of two separate sections. Considering K.S.A. 44-510c and K.S.A. 44-510d together, as we have, is fully consistent with the regulation that the director of workers compensation adopted: K.A.R. 51-7-8.

Barbury also argues that Kansas statutes before 1968—and thus the current statutory scheme—wasn't intended to reduce the extent of permanent benefits based on what temporary benefits have been paid. Barbury also cites a 1939 Kansas Supreme Court decision, *Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 96 P.2d 684 (1939), which said that some limiting language found in Kansas' prior statute, G.S. 1935, 44-510(21) (L. 1927, ch. 232, sec. 10), was simply "to prevent pyramiding of compensation for the same specific injury." 150 Kan. 934, Syl. ¶ 2; see 150 Kan. at 941, 944.

We do not find those arguments persuasive, either. First, we find the present K.S.A. 44-510c and K.S.A. 44-510d clear in their directive that the compensation ultimately granted for a scheduled

permanent-partial disability is exclusive of all other compensation. Second, we note that a similar approach is set out for unscheduled permanent-partial disabilities in K.S.A. 44-510e, and Barbury agrees with that reading of that statute. Third, as the employer in Barbury's case, Duckwall, has pointed out in its brief, many cases have specifically noted the deduction of the number of weeks of temporary-disability payments when calculating an award, even though that was not the issue decided on appeal. *E.g., Rhea v. Kansas City Power & Light Co.*, 176 Kan. 674, 675-79, 272 P.2d 741 (1954); *Gallagher v. Menges & Mange Const. Co.*, 146 Kan. 506, 506-09, 72 P.2d 79 (1937); *Hering v. San Ore Construction Co.*, 130 Kan. 70, 72-76, 285 P. 592 (1930); *Cowan v. Josten's American Yearbook Co.*, 8 Kan. App. 2d 423, 427, 660 P.2d 78, *rev. denied* 233 Kan. 1091 (1983).

Another panel of our court has recently made the same conclusion we reach here: K.A.R. 51-7-8 is a valid regulation because it follows the statutory requirement to subtract the number of weeks of temporary-total-disability payments from the scheduled number of weeks when calculating a permanent-partial-disability award under K.S.A. 44-510d. *Mitchell v. Petsmart, Inc.*, 41 Kan. App. 2d 523, 538-39, 203 P.3d 76 (2009), *pet. for review pending* (filed April 15, 2009). We agree with its conclusion.

The decision of the Workers Compensation Board is therefore affirmed.