Brian BECKMAN, Claimant
and Appellant,

v.

JOHN MORRELL & COMPANY and the
State of South Dakota, Department of
Labor, Division of Labor and Manage-
ment, Respondents and Appellees.

No. 16969.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1990.

Decided Oct. 31, 1990.

Rehearing Denied Dec. 6, 1990.

Bradley G. Bonynge, Sioux Falls, for
claimant and appellant.

David J. Vickers and Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for respondents and appellees John Morrell & Co.

JOHNSON, Circuit Judge.

Brian Beckman (Beckman) appeals from a circuit court judgment denying him both temporary total disability benefits and rehabilitation benefits. We affirm the denial of temporary total disability benefits and reverse the denial of rehabilitation benefits and reinstate the award.

## FACTS

Beckman graduated from high school in 1976 and attended one year of college before becoming employed by John Morrell and Company (Morrell). He worked in the beef kill area for six years and in the pork cut area for about three years. Work in both of these areas required Beckman to perform production line labor consisting of heavy lifting and repetitive hand movements.

In the fall of 1986, Beckman experienced numbness in his right hand. This numbness was especially prevalent at night. In the morning he could not make a fist. With the help of elastic bandages and whirlpool treatments he continued working. Morrell had notice of this injury.

On April 3, 1987, in an incident unrelated to this action, Beckman was injured while working on the production line. A co-worker accidentally cut Beckman's right hand, including the tendon in his middle finger. Beckman missed the rest of work that day and returned to work the following Monday to one-handed light duty employment. Beckman remained on light duty through the end of the month.

From May 1, 1987, through November 1, 1987, Beckman and other members of Local 304A of the United Food and Commercial Workers Union went on a sympathy strike against Morrell. During this strike, Beckman notified Morrell that he was still suffering from numbness and swelling of his hand. These symptoms resulted from the 1986 injury and were unrelated to the April 1987 accident. Morrell referred Beckman to various physicians and Beckman's condition was eventually diagnosed as carpal tunnel syndrome of the right wrist. On December 31, 1987, Dr. Robert E. VanDemark (Dr. VanDemark) performed surgery which involved a release of carpal tunnel and anterior transposition of the ulnar nerve. On February 4, 1988, after a recuperative period, Dr. VanDemark released Beckman to light duty work with no lifting. Later the restriction was modified to allow lifting of up to 15 pounds.

While Beckman was on strike he helped shingle a relative's roof for five days in June 1987. Then he went to work for a roofing company carrying hot buckets of tar. Beckman quit after one week because he was afraid that he might drop a bucket of tar and splatter tar on himself or coworkers due to his injured hand.

On September 6, 1987, Beckman began a ten-month printing technology course at Southeast Vo–Tech Institute. Beckman attended class from 1:30 p.m. until 7:30 p.m. five days a week. At the same time he started a part-time job in the produce section of a local grocery store where he worked for about one month. Beckman then began to work for Metz Federal Credit Union (Metz) in their printing department. He started at $5.00 per hour and eventually received a raise of $.50 per hour, working from 8:00 a.m. to noon five days per week.

On June 26, 1988, Beckman graduated from the printing technology course and began a new job at Modern Press for $6.00 per hour plus employee benefits.

Morrell never called Beckman back to work. According to the terms of the collective bargaining agreement, striking workers were to be called back in order of seniority.

Beckman filed a claim for worker's compensation benefits. He sought rehabilitation benefits for the ten month printing technology course and temporary total disability benefits for the time period from February 4, 1988 (the day Dr. VanDemark released him to light duty work) to June 26,

1988 (the day he began a new job at Modern Press).

The Department of Labor (Department) conducted a formal hearing which included Beckman's testimony, Morrell's safety officer's testimony, and Dr. VanDemark's deposition testimony.

Department found that Beckman was entitled to rehabilitation benefits because he was unable to return to his usual and customary line of employment and rehabilitation was necessary to return him to suitable, substantial, and gainful employment. Department denied Beckman's claim for temporary total disability benefits finding that Beckman was unable to work because of his strike participation rather than because of work-related injuries.

Morrell appealed the award of rehabilitation benefits and Beckman filed a notice of review challenging Department's denial of temporary total disability benefits.

The circuit court reversed Department's award of rehabilitation benefits finding that when Dr. VanDemark released him to limited light duty work on February 4, 1988, there were five light duty rehabilitation jobs available to Beckman at the same hours and pay. Additionally, the court found that Beckman's participation in the 1987 strike precluded him from being offered light duty work. Thus, the court affirmed department's denial of temporary total disability benefits.

## SCOPE OF REVIEW

SDCL 1–26–37 controls this court's scope of review from decisions of administrative agencies. This court reviews an agency's decisions in the same manner as the circuit court. There is no presumption that the circuit court's decision is correct. Thus, we decide, considering all of the evidence of the record, whether or not the agency's findings of fact are clearly erroneous and whether the law has been correctly applied. *Barkdull v. Homestake Min. Co.*, 317 N.W.2d 417 (S.D.1982).

## DECISION

## I. REHABILITATION BENEFITS

SDCL 62–4–5.1 * controls whether an injured employee is entitled to rehabilitation benefits. The statute establishes five requirements an injured employee must meet before receiving rehabilitation benefits:

1. The employee must be unable to return to his usual and customary line of employment;

2. Rehabilitation must be necessary to restore to the employee suitable, substantial, and gainful employment;

3. The program of rehabilitation must be a reasonable means of restoring the employee to employment;

4. The employee must file a claim with his employer requesting the benefits; and

5. The employee must actually pursue the reasonable program of rehabilitation.

*Cozine v. Midwest Coast Transport, Inc.*, 454 N.W.2d 548 (S.D.1990).

Here, the disagreement is whether Beckman meets the first, second, and third requirements of SDCL 62–4–5.1, the first of which is inability to return to usual and customary line of employment.

Beckman maintains that his usual and customary line of employment was that of a heavy production line laborer. This requires full use of both hands, the ability to

---

* 62–4–5.1. Compensation during period of rehabilitation—Procedure. If an employee suffers disablement as defined by subdivision (2) of § 62–8–1 or an injury and is unable to return to his usual and customary line of employment, the employee shall receive compensation at the rate provided by § 62–4–3 up to sixty days from the finding of an ascertainable loss if the employee is actively preparing to engage in a program of rehabilitation. Moreover, once such employee is engaged in a program of rehabilitation which is reasonably necessary to restore the employee to suitable, substantial and gainful employment, the employee shall receive compensation at the rate provided by § 62–4–3 during the entire period that he is engaged in such program. The employee shall file a claim with his employer requesting such compensation and the employer shall follow the procedure specified in chapter 62–6 for the reporting of injuries when handling such claim. If the claim is denied, the employee may petition for a hearing before the department.

complete repetitive movements with both hands, and the ability to lift heavy objects. Since Beckman has full use of only one hand he contends that he can no longer compete or take part in his usual line of employment.

Morrell argues that Beckman's usual and customary line of employment was general labor. Morrell maintains that since Beckman was a general laborer it could assign him to a number of different work duties including anything from heavy production line work to light duty work requiring the full use of only one hand. Morrell asserts that except for Beckman's participation in the 1987 strike, it would have offered him at least five different one-handed jobs at the same hours and pay. Thus, Morrell concludes, Beckman was able to function in his usual and customary line of employment (general labor) but admittedly, in a position requiring the use of only one hand.

■ The hearing examiner determined that Beckman's usual and customary line of employment was manual labor, "involving repetitive movement and heavy lifting" and that he was unable to return to this line of employment. We agree.

A person's usual and customary line of employment may be determined by such factors as the skills or abilities of the person, the length of time the person has spent in the type of work, the proportion of time the person has spent in the type of work when compared to the worker's entire working career, and the duties and responsibilities of the person at the work place.

Here, Beckman did not possess or develop any transferable skills while at Morrell. His only ability was manual labor. Until the sympathy strike, he spent his entire adult work life—some nine years—at Morrell. Beckman's duties and responsibilities always presupposed that he could lift heavy objects and complete repetitive movements. He was hired to work in the beef kill area. During Beckman's six years in beef kill, his main duty was shackling cattle. Then, he was transferred to the pork cut department. His duty in this area was to bone hams which involved the use of a knife in his right hand. It is unreasonable to assert, as Morrell does, that five one-handed jobs bear any resemblance to the usual and customary line of employment Beckman held while at Morrell.

■ The second requirement of SDCL 62-4-5.1 is: rehabilitation must be necessary to restore the employee to suitable, substantial, and gainful employment. Beckman offered testimony and evidence that he was unable to obtain employment at more than minimal wages following his injury. Morrell argues that there were jobs that Beckman could perform without rehabilitation. Five of these jobs were with Morrell at the same hours and pay as Beckman's old job. In order to prevail, Morrell must show that employment was regularly and continuously available to Beckman and that such employment would restore him to suitable employment.

The statute requires more than the mere restoration to employment. The new employment must be suitable when compared to the employee's former job. Just as with the odd-lot test determination of total disability, once an employee has made a prima facie showing that she is unable to find suitable employment, the employer then has the burden of establishing that the employee would be capable of finding such employment without rehabilitation.

*Cozine, Id.* at 554.

The five one-handed jobs that Morrell claims were available to Beckman except for his participation in the strike are:

1. *Stamping honey hams.* The worker stamps edible ink on the ham as it passes in front of him on a conveyer belt.

2. *"Government clean up work."* The worker picks up light trash around the plant and parking lot.

3. *Labeling hams.* The worker affixes the label on the ham as it passes in front of him on a conveyer belt.

4. *Labeling vacuum packages.* The worker affixes the label on the packages as they pass on a conveyer belt.

5. *Wiping moisture off of vacuum packages.* Self explanatory.

Dr. VanDemark stated Beckman was capable of performing all of these jobs.

The above one-handed jobs are similar in one key aspect. They do not require the worker to possess or develop any transferable work skills. If Morrell would lay off Beckman or close the plant he would be left without any transferable skills. Without Morrell or rehabilitation Beckman would only qualify for jobs at minimal wages. The fundamental purpose of rehabilitation benefits is to insure that an injured worker has an opportunity to develop marketable and transferable work skills that enable him to secure suitable, substantial, and gainful employment. Clearly, the positions listed above are not suitable to Beckman. *Barkdull v. Homestake Mining Co.*, 411 N.W.2d 408 (S.D.1987); and *Cozine, supra.*

■ Next, Morrell claims that the printing technology course was not a necessary program of rehabilitation because Beckman was already, except for the first month of the printing course, working in the same field for Metz earning $5.00 per hour.

Morrell does not point to any evidence indicating that Beckman would have been hired without being enrolled in a printing technology course. It is just as likely that Metz hired Beckman because of his enrollment. This is a question of fact. To accept Morrell's assertion would force this court to speculate into the mind of the person who hired Beckman on behalf of Metz. The hearing examiner certainly considered any evidence concerning the hiring of Beckman at Metz when determining that the printing technology course was reasonably necessary to restore Beckman to suitable, substantial and gainful employment. Without evidence in the record indicating otherwise we hold that the hearing examiner's finding is not clearly erroneous.

■ The third requirement of the rehabilitation benefit statute is: the program of rehabilitation must be a reasonable means of restoring the employee to employment.

Morrell contends that the printing technology course was unreasonable in light of *Barkdull, supra.* We disagree. "The kind of rehabilitation program contemplated by SDCL 62-4-5.1 is that which enables the disabled employee to find suitable and gainful employment not to elevate his station in life." *Barkdull, Id.* at 410. When compared to Beckman's past work experience it is obvious his station in life was not elevated by completing the printing course.

■ Next, Morrell argues that since Beckman received only a $.50 raise after the completion of the program, it is not "fair and reasonable to require Morrell to pay ten months of benefits so Beckman can augment his earnings by $.50 per hour. . . ." Morrell does not cite any case law or statutory authority to support this argument. It is clear, after reviewing SDCL 62-4-5.1, that the amount of a raise in pay, if any, after the completion of a rehabilitation program is not a matter that may be considered in determining whether to award rehabilitation benefits.

The fourth and fifth requirement of SDCL 62-4-5.1 are not at issue here.

The hearing examiner's finding that Beckman met all of the requirements of SDCL 62-4-5.1 was correct and the circuit court erred in reversing this decision.

## II.  TEMPORARY TOTAL DISABILITY BENEFITS

Beckman claims he is entitled to temporary total disability benefits from the date Dr. VanDemark released him to light duty work, February 4, 1988, until the date he started his new position at Modern Press, June 26, 1988, because Morrell did not offer him light duty work. Morrell claims that Beckman would have been recalled and offered light duty work except for his participation in the 1987 strike.

■ In general, a claimant who refuses favored (light duty) work, due to non-medical reasons, temporarily forfeits his right to compensation benefits. Here, Beckman was not offered light duty work because he was out on strike and he was not recalled because of his relatively low seniority status. His strike participation, rather than a medical problem, precluded him from being

offered light duty or favored work. Therefore, the hearing examiner's denial of temporary total disability benefits was correct. *See, Jones v. Auto Specialities Mfg. Co.,* 177 Mich.App. 59, 441 N.W.2d 1 (1988); *Pigue v. General Motors Corporation,* 317 Mich. 311, 26 N.W.2d 900 (1947).

The circuit court judgment is affirmed with respect to the denial of temporary disability benefits. The judgment is reversed with respect to the denial of rehabilitation benefits and the award of rehabilitation benefits shall be reinstated.

HENDERSON, J., concurs.

SABERS, J., concurs specially.

MILLER, C.J., and MORGAN, J., dissent.

JOHNSON, Circuit Judge, for WUEST, J., disqualified.

SABERS, Justice (concurring specially).

In *Cozine, supra,* we established that just because an injured worker can still do some jobs without rehabilitation does not mean the worker is capable of returning to his "usual and customary line of employment" or that rehabilitation is unnecessary to provide the worker with "suitable, substantial and gainful employment." Just as Cozine was a truck driver unable to function as one by a work-related injury, so Beckman was a heavy production laborer unable to function as one by a work-related injury. The "jobs Cozine theoretically would be able to perform" would not necessarily be "regularly and continuously ... available to Cozine," nor would they necessarily be "suitable ... when compared to [her] former job." *Cozine,* 454 N.W.2d at 554. The same can be said for trash-picking, package-labeling and the other unskilled jobs theoretically within Beckman's capability after his injury.

Cozine was denied rehabilitation benefits because we concluded that a four-year college degree was not reasonably necessary to the rehabilitation she required. Obviously, no similar complaint can be raised about Beckman's ten-month printing technology course at a local vocational school

and the dissent does not claim otherwise. Therefore, under *Cozine,* the majority's conclusion that Beckman is entitled to rehabilitation benefits is correct.

MILLER, Chief Justice (dissenting).

While I agree with the majority that the criteria set forth in *Cozine v. Midwest Coast Transport, Inc.,* 454 N.W.2d 548 (S.D.1990), control, I disagree with the majority's application of that authority to these facts.

I further agree that the first three elements laid out in *Cozine, supra,* are in dispute in this case. I disagree with the majority's application of the first two elements as they apply to the facts of this case.

As to the first element (that the employee be unable to return to his usual and customary line of employment), I believe, as did the circuit court, that Morrell clearly and convincingly met its burden and established that there were five light-duty jobs of equal pay which were actually available to claimant. (Note that Dr. VanDemark specifically approved claimant's returning to work.)

Further, I agree with the circuit court that the real cause of claimant's inability to return to work was not his medical condition; rather, it was his participation in a sympathy strike at Morrell and the collective bargaining agreement which prevented his recall until his seniority came up.

Rehabilitation benefits do not repeal the judicially created favored-work doctrine. The two remedies are complimentary and should not be construed to conflict. *Christiansen v. Eaton, Yale & Towne, Inc.,* 89 Mich.App. 440, 280 N.W.2d 463 (1978).

Under the favored-work doctrine, the employer carries its burden of persuasion to show that the tendered job is within the claimant's residual capacity. Upon such showing, the burden of persuasion then shifts to the claimant to show that he is justified in refusing the offer of modified work. *Talley v. Goodwin Brothers Lumber Co.,* 224 Va. 48, 294 S.E.2d 818 (1982).

Here, by virtue of claimant's membership in the union, which called the strike, claimant did effectively place himself in the position of refusing suitable employment that had been offered him. Loss of union status and seniority is no excuse for not taking lighter work suitable to claimant's condition. Larson, Workmen's Compensation Law, § 57.66 at 301 (1989). (The possible loss of claimant's union rights does not affect the determination of whether the claimant should be required to accept employer's offer of light (favored) work. *M. & M. Transportation Co. v. Della Posta,* 74 R.I. 514, 62 A.2d 654, 657 (1948)); *see also Hamlin v. Michigan Seat Co.,* 112 Mich.App. 84, 314 N.W.2d 804 (1981) (benefits denied where claimant had been offered favored work with the employer's subsidiary company but refused to accept the job because the subsidiary was not a union plant). Therefore, I agree with the circuit court that claimant has failed to sustain his burden of proving that he was unable to return to his usual and customary line of employment and, as a result, he is not entitled to rehabilitation compensation benefits.

The second requirement is that the rehabilitation be necessary to restore the employee to suitable, substantial and gainful employment. As to this requirement, I again disagree with the majority's analysis.

In *Cozine, supra,* we held that the second requirement of the statute required more than the mere restoration of employment. The new employment must be suitable when compared to the employee's former job. *Id.* at 554. *Cozine* goes on to note that once an employee has made a prima facie showing that he/she is unable to find employment, the employer then has the burden of establishing that the employee would have been capable of finding such employment without rehabilitation. Here the facts show that the majority opinion is flawed.

Although claimant argues that only minimum wage jobs were available to him, Morrell has established that there were five jobs available for claimant at his previous salary. Claimant chose to go on strike at Morrell from May 1, until November 4, 1987. Morrell should not be punished because claimant chose to strike.

In addition to the facts reiterated earlier, it must be observed that the printing technology course was not a necessary program of rehabilitation because claimant was already, except for the first month of the training course, working in the same field for Metz earning $5.00 an hour. Moreover, his earnings were only increased by fifty cents an hour following his completion of the program. His new job at Modern Press was paying $6.00 an hour. This rehabilitation program was not necessary, because he was already well employed in the field.

It should be noted that an injured worker cannot insist upon rehabilitation benefits if other suitable employment opportunities exist which do not require retraining. *Id.* at 554. Here, claimant was already working in suitable, substantial, and gainful employment *before* he commenced his retraining program. The majority suggests that it is likely that Metz hired claimant because of his enrollment in the course, further suggesting that it is a question of fact which would force this court to speculate into the mind of the person who hired claimant on behalf of Metz. That simply is not the issue. The issue is whether or not claimant is capable of getting suitable, substantial and gainful employment without the rehabilitation program. Here, as stated earlier, because he was already employed in the printing field, rehabilitation benefits were unnecessary. (I hasten to note, as did the trial court, that claimant presented no expert testimony (and, in fact, no testimony other than his own) that rehabilitation was reasonably necessary to restore him to the suitable, substantial and gainful employment in the printing technology field. *See Barkdull v. Homestake Mining Company,* 411 N.W.2d 408 (S.D. 1987) (*Barkdull* II).)

"The kind of rehabilitation program contemplated by SDCL 62–4–5.1 is that which enables the disabled employee to find suit-

able and gainful employment, not to elevate his station in life." *Id.* at 410.

Therefore, I respectfully dissent.

I am authorized to state that Justice MORGAN joins in this dissent.