George Thomas CHIOLIS, Claimant
and Appellee,

v.

LAGE DEVELOPMENT COMPANY and
United Fire & Casualty Company,
Employer, Insurer and Appellants.

No. 18213.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1993.

Decided Feb. 9, 1994.

Talbot J. Wieczorek, Gunderson, Palmer, Goodsell & Nelson, Rapid City, for claimant and appellee.

Leah J. Fjerstad, Lynn, Jackson, Shultz & Lebrun, Rapid City, for employer, insurer and appellants.

AMUNDSON, Justice.

Lage Development Company and United Fire & Casualty Company (Lage) appeal the circuit court's ruling which affirmed a decision of the South Dakota Department of La-

bor (Department) in favor of George Chiolis (Chiolis) on Chiolis' claim for vocational rehabilitation benefits. We reverse and remand.

## FACTS

On February 15, 1989, Chiolis, while employed with Lage as a carpenter, fell from a roof fracturing the radial head of his right elbow. Following a number of medical procedures, it was determined that Chiolis would not be able to return to his usual and customary employment as a carpenter. Chiolis was evaluated by Dr. Dale Anderson and was given a twenty-five percent permanent partial impairment rating of the right upper extremity as a result of the pain and discomfort experienced from the injury. Lage paid worker's compensation benefits for the injury.

After receiving temporary benefits, Chiolis filed a petition for hearing with Department claiming medical expenses, temporary total disability, and other compensable losses. The issues before Department were whether Chiolis was entitled to additional benefits for loss of use and whether he was entitled to vocational rehabilitation benefits.

At the worker's compensation hearing, Chiolis' vocational expert testified that Chiolis was unable to return to like employment due to his injury. Lage's vocational expert testified that jobs existed at seventy-five to eighty percent of Chiolis' previous salary of $6.50 per hour. Lage's expert also explained that those positions would have to be modified to accommodate his disability. No determination had been made regarding the willingness of a potential employer to modify these positions on behalf of this claimant. Lage's expert's opinion was that some short-term retraining may be necessary.

At the time the Department hearing was held, Chiolis was enrolled in and had successfully completed the spring and summer terms of a four-year mechanical engineering program at South Dakota School of Mines & Technology (SDM & T). At the hearing, Chiolis sought rehabilitation benefits for two years. He planned to apply these rehabilita-

tion benefits to his engineering degree at SDM & T.

Chiolis' own expert testified that a two-year vocational program would return him to suitable employment but a four-year college education was not required to return him to a wage commensurate to his pre-injury wage.

After considering this evidence, Department determined that two years of rehabilitation would be necessary to restore Chiolis to comparable employment. Department ruled that Chiolis' current program at SDM & T was a reasonable means of restoring Chiolis to comparable employment and allowed him to apply the two years of rehabilitation benefits to his college education. Lage appealed to the circuit court which affirmed Department's decision.

## ISSUE

Can a worker's compensation claimant who has been awarded two years' rehabilitation benefits apply those benefits to a four-year college degree?

## ANALYSIS

 In reviewing the decisions of an administrative agency, this court's scope of review is prescribed by SDCL 1–26–37. Our standard of review is the same as the circuit court's when reviewing the decision of an administrative agency. We determine whether the agency's findings of fact are clearly erroneous and whether the law has been correctly applied. *Cozine v. Midwest Coast Transport Inc.*, 454 N.W.2d 548 (S.D. 1990) (citing *Barkdull v. Homestake Mining Co.*, 317 N.W.2d 417 (S.D.1982) (*Barkdull I* )). Our review of the circuit court's decision is without any presumption that its decision is correct. *Id.*

SDCL 62–4–5.1 sets forth when an individual is entitled to rehabilitation benefits under the South Dakota Worker's Compensation statute.* At the time of Chiolis' injury, SDCL 62–4–5.1 provided as follows:

An employee who suffers disablement as defined by subdivision (2) of § 62–8–1 or an injury, and is unable to return to his

* Chiolis' injuries occurred in 1989; therefore, SDCL 62–4–5.1 will be applied as it existed in 1989. The subsequent amendments would not effect this action.

usual and customary line of employment, shall receive compensation at the rate provided by § 62–4–3 during the period he is engaged in *a program of rehabilitation which is reasonably necessary to restore the employee to suitable, substantial and gainful employment.* The employee shall file a claim with his employer requesting such compensation and the employer shall follow the procedure specified in chapter 62–6 for the reporting of injuries when handling such claim. If the claim is denied the employee may petition for a hearing before the department. (Emphasis added.)

In *Cozine,* 454 N.W.2d at 553, this court interpreted SDCL 62–4–5.1 as requiring five elements before an injured employee could receive rehabilitation benefits. The five requirements are as follows:

(1) The employee must be unable to return to his usual customary line of employment;

(2) Rehabilitation must be necessary to restore the employee to suitable, substantial and gainful employment;

(3) The program of rehabilitation must be a reasonable means of restoring the employee to employment;

(4) The employee must file a claim with his employer requesting the benefits; and

(5) The employee must actually pursue the reasonable program of rehabilitation.

*Id.* at 553.

■ Department was correct when it determined that Chiolis had met the first and second requirements. It is undisputed that he was unable to return to his usual line of employment as a carpenter. Although evidence was shown that Chiolis had not aggressively pursued further employment, there was a consensus among the experts that Chiolis would have to undergo some form of retraining to obtain comparable employment. Lage's expert testified that jobs were available at approximately eighty percent of Chiolis' prior wage; however, certain modifications would have to be made to accommodate Chiolis' disability. "The statute requires more than mere restoration to employment. The new employment must be suitable when compared to the employee's former job." *Id.* at 554. Lage has not met its burden of establishing that Chiolis would be capable of finding such employment without rehabilitation because it did not present any potential employers who were willing to pay seventy-five to eighty percent of Chiolis' prior wage and make the necessary modifications to accommodate Chiolis. *See Wendel v. Domestic Seed & Supply,* 446 N.W.2d 265 (S.D.1989). Therefore, finding that rehabilitation was necessary to restore Chiolis to suitable, substantial and gainful employment was correct.

■ The rehabilitation program must also be a reasonable means of restoring the employee to employment.

The kind of rehabilitation program contemplated by SDCL 62–4–5.1 is that which enables the disabled employee to find suitable and gainful employment not to elevate his station in life. An injured worker cannot insist upon a college education if other suitable employment opportunities exist which do not require college training.

*Barkdull v. Homestake Mining Co.,* 411 N.W.2d 408, 410 (S.D.1987) (*Barkdull II*).

■ Although Chiolis did not insist upon four years of rehabilitative benefits for his college education, his interpretation of SDCL 62–4–5.1 is directly contrary to its express construction. SDCL 62–4–5.1 specifically allows rehabilitation benefits while a claimant is "engaged in *a program of rehabilitation* which is reasonably necessary to restore the employee to suitable, substantial and gainful employment." (Emphasis added.) This statute allows rehabilitation benefits while the claimant is engaged in a "program" of rehabilitation, not simply a "period" of rehabilitation. "A statute is primarily interpreted by according the statutory language its 'plain, ordinary and popular meaning.'" *McCloud v. Andersen,* 485 N.W.2d 799, 801 (S.D.1992) (quoting *Matter of Estate of Pejsa,* 459 N.W.2d 243, 246 (S.D.1990)). This court will not liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction. *Appeal of Presentation Sisters, Inc.,* 471 N.W.2d 169, 175

(S.D.1991) (citing *In re Certification of Questions of Law,* 402 N.W.2d 340 (S.D.1987)).

The four-year program of college education embarked upon by Chiolis falls outside the terms of the South Dakota statute allowing rehabilitative benefits. Rather than retraining Chiolis for suitable and gainful employment, as required by our ruling in *Barkdull II,* the college program expands his occupational horizons and elevates his station in life. *Barkdull II,* 411 N.W.2d at 410.

> As this court unanimously held in *Cozine:* Cozine bears the burden of establishing the reasonableness of her rehabilitation program, yet she has not demonstrated that the only suitable employment opportunities that are available to her require a college education. It is her right to seek a college education, but Midwest cannot be compelled to pay for such a program if it is not necessary.

*Id.,* 454 N.W.2d at 554.

The same holds true in this case. Chiolis bears the burden of establishing the reasonableness of his rehabilitation program. However, not even Chiolis' own vocational rehabilitation expert would agree that a four-year program was necessary to return Chiolis to substantial, gainful employment.

> Q. You would agree, wouldn't you, Mr. Peniston, that Mr. Chiolis does not need a four-year college degree to return him to substantial, gainful employment?
>
> A. Yes.
>
> Q. And so, in fact, the program that he is currently in is not necessary to return him to substantial, gainful employment?
>
> [objection omitted]
>
> A. If you mean by, "suitable," that it's going to return him to a wage commensurate with his previous earnings, in that light, I feel that a four-year college program isn't necessary, no.
>
> Q. In fact, it's your opinion that he—or, in fact, you had recommended a short-term rehabilitation—vocational-rehabilitation program. Is that correct?
>
> A. Two years, yes.

In a contested rehabilitation case, Department must not only consider the interests of the employee in determining an appropriate rehabilitation program, but also must not lose sight of the fact that the employer has a stake in the case. The employer is required to "underwrite" the expenses of rehabilitation. It is essential that any program selected must be a program required for gainful and suitable employment. *Barkdull II,* 411 N.W.2d at 410.

We are not implying that a four-year college degree can never be a reasonable means of rehabilitation. *See* A. Larson, *The Law of Worker's Compensation* § 61.22 (1992). However, in this case, rather than restoring Chiolis to suitable, substantial, and gainful employment, the program approved by Department would allow Chiolis to elevate his station in life at the expense of Lage. *Barkdull II,* 411 N.W.2d at 410. "It is [Chiolis'] right to seek a college education, but [Lage] cannot be compelled to pay for such a program if it is not necessary." *Cozine,* 454 N.W.2d at 554.

■ Chiolis started his current college program before petitioning Department for rehabilitation benefits. Even recognizing that the primary purpose of rehabilitation benefits is to restore the injured employee to substantial and gainful employment, the worker may not unilaterally decide what training he or she may want to pursue and proceed to do so at the employer's expense. *Murdock v. MBPXL Corp.,* 12 Kan.App.2d 312, 742 P.2d 441, 446 (1987). "To approve such an independent approach to rehabilitation training by a claimant would result in untold administrative and economic chaos and a total breakdown of the legislatively intended benefits to the injured worker of rehabilitation training." *Id.* "While such self-improvement is highly laudable, particularly in view of the claimant's independent quest for it, unaided by the employer or carrier, it is outside the range of benefits" provided by South Dakota law. *City of Salem v. Colegrove,* 228 Va. 290, 321 S.E.2d 654, 656 (1984). To approve a procedure which allows an injured employee to select a rehabilitation program before petitioning Department or reaching an agreement with the

employer would be putting the cart before the horse.

The test outlined in *Cozine* requires the claimant to establish five requirements before they are entitled to rehabilitation benefits. 454 N.W.2d at 553. Chiolis has not met the third requirement: proving that a four-year college degree is a reasonable means of restoring him to suitable and gainful employment. Therefore, since Chiolis has failed to satisfy this requirement, there is no need to address the remaining two requirements.

For the foregoing reasons, the award of rehabilitation benefits is reversed and this case is remanded for entry of a judgment consistent with this opinion.

MILLER, C.J., and WUEST, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

This case hurts. A young crippled man, hurt on the job, is denied the right to rehabilitate himself.

I respectfully dissent. The case was thoroughly considered below by the South Dakota Department of Labor and Circuit Court. Two formal decisions, based upon the facts of this case and the statutory and decisional law of South Dakota, were entered.

Check the opinion. You will not find one statement to the effect that:

1) South Dakota Department of Labor's Findings of Fact dated February 10, 1992, were clearly erroneous;

2) South Dakota Department of Labor's Conclusions of Law dated February 10, 1992, are mistakes of law;

3) South Dakota Department of Labor's Order dated February 10, 1992, is clearly erroneous or contains mistakes of law.

The majority opinion does not even allude to them. Attached hereto, and by reference made a part hereof, are said Findings of Fact, Conclusions of Law, and Order. In reviewing this case, it is noted that the trial court's order, dated November 20, 1992, incorporates the decision of the Department of Labor. Additionally, the trial court, as a Conclusion of Law, held that *Cozine v. Midwest Coast Transport, Inc.*, 454 N.W.2d 548 (S.D.1990) and this case are factually differ-

ent, thus causing opposite results, i.e., distinguishable. I agree.

Jesus was a carpenter; so was Chiolis. Honorable vocation. But Chiolis cannot return to his employment as a carpenter—and both employer and insurance company admit it in their joint brief (at page 8). As working men have it, carpenters are ordinarily paid in excess of the unskilled laborer. Chiolis was employed in manual labor type jobs before taking vocational carpentry training. He tried to elevate himself. And he did. Unfortunately, he fell off a roof. He now has a serious, disabling, and painful injury.

Insurer and Employer want him to return to manual labor. Consider Findings of Fact IX and X. Chiolis was placed on a light-duty work restriction. How can he go back to manual labor and be restricted to lifting only ten pounds? What employer would hire him under such circumstances? Is not law supposed to make sense?

Chiolis will either survive with a college education (or some skill via education) where he uses his brain or he will be on the welfare rolls the rest of his life and he is not yet 30 years of age. The South Dakota School of Mines and Technology is located in Western South Dakota in South Dakota's second largest city, Rapid City. Students from all over the United States and the world attend that institution with its variety of courses in academic achievement. It maintains a worldwide respect.

Chiolis? He wants to go to that institution. He is attending that institution. Again, he wants to elevate himself! He does not want to be on the welfare rolls. *See* Finding of Fact II wherein it is expressed: "Once claimant has completed his educational goals, the wage loss factor will disappear. He will be economically restored." In *Beckman v. John Morrell & Co.*, 462 N.W.2d 505, 508 (S.D.1990), our Supreme Court considered the same type of argument we see now: An injured employee could do certain jobs without rehabilitation. This Court *required* that *the employer* demonstrate that these jobs were open on a continuous basis, and second, that these open and continuously available jobs would restore the employee to

suitable employment. *Id.* "The fundamental purpose of rehabilitation benefits is to ensure that an injured worker has an opportunity to develop marketable and transferable work skills that enable him to secure suitable, substantial, and gainful employment." *Id.* at 509.

In this case, the hearing examiner determined that to "return to suitable, substantial and gainful employment, Mr. Chiolis must have rehabilitation." Finding of Fact XV. Lage Development must show this conclusion clearly erroneous. Not established in this case!

We refused to tolerate the argument in *Beckman,* which is again cast upon the legal waters in this case. There, employer advanced a theory that there were five other positions in the employer's business which the injured claimant could handle. We held that these jobs were not continuously open and available because the work was scaled down to accommodate the injured claimant. *Beckman,* 462 N.W.2d at 508–509. Here, the same approach is used: Send this man into the arduous labor field but tell his employer, "Hey, don't you let him lift over 10 pounds." In essence, the expert for Lage Development wants to modify the entire market of labor to escape paying benefits. It will not work; the labor market will not accept such a philosophy.

Graduation is just around the corner! In December, 1994, Chiolis can earn a 4–year degree. Tally ho the fox! Continue the hunt. Towards the degree. Onward with the rehabilitation. Up with education. Down with an insurance company trying to wiggle out of its just responsibility. Chiolis is requesting benefits for 24 months. (In *Cozine,* benefits were sought for an undergraduate and masters degree; in *Barkdull v. Homestake Mining Co.,* 317 N.W.2d 417 (S.D.1982), benefits were sought for *all* years of college.) If his spirits are not put down so hard by litigation and appeals, perhaps he can join those individuals who need justice at the Bar so he can have some food, clothing and housing—so he can study without economic privation. Thereby, he can attain an educated mind which will take a direction to economic stability. I note that four years

have now elapsed since his injury. Hold on, the morning is coming ... or is it too late now? Like many injured claimants, has Chiolis been entombed in the system? Lage Development's approach (and its insurer) should not cause a disabled employee to forego rehabilitation for years, while there remains a final determination on the available length of rehabilitation benefits.

In my opinion, the Department of Labor's hearing officer properly found Chiolis entitled to rehabilitation benefits under *Cozine,* because: (1) all medical testimony agrees Chiolis is unable to return to his usual and customary line of work; (2) the vocational experts believe rehabilitation must be pursued to restore Chiolis to suitable, substantial, and gainful employment; (3) it is undisputed that Chiolis has filed a claim requesting rehabilitation benefits; (4) Claimant's vocational rehabilitation expert concluded the program Chiolis has chosen is reasonable and no evidence contradicted this; and (5) Chiolis is actively pursuing a program that, as recognized by both rehabilitation experts, *will restore his "marketable and transferable skills."* (Emphasis supplied mine).

This Court should not lose sight of the intent of earlier decisions in this Court. We find in *Mills v. Spink Elec. Co-op,* 442 N.W.2d 243, 246 (S.D.1989):

> It is long-standing public policy that worker's compensation statutes be liberally construed in favor of injured employees. *S.D. Med. Service v. Minn. Mut. Fire & Cas. Co.,* 303 N.W.2d 358 (S.D.1981). Worker's compensation statutes are "remedial, and should be liberally construed to effectuate [their] purpose." *Moody v. L.W. Tyler, Custom Combiners,* 297 N.W.2d 179, 180 (S.D.1980).

As I consider the settled law in this state on *liberal* construction of *remedial* statutes, my mind travels to the literary work of David Ricardo in *Principles of Political Economy V:*

> The friends of humanity cannot but wish that in all countries the laboring classes should have a taste for comforts and enjoyments, and that they should be stimulated by all legal means of their exertions to

procure them. There cannot be a better security against a superabundant population.

Therefore, is it not true that the laboring people should be encouraged to want the good things of life and deserve to seek them by *legal means,* especially when state statutes authorize them to do so?

As a boy in Hand County, my life was drawn to the law by a wonderful eighth grade teacher, Roy Anderson, the YCL (Young Citizen's League) of South Dakota, and the life of Abraham Lincoln. Lincoln, in his message to Congress on December 3, 1861, expressed:

Labor is prior to, and independent of, capital. Capital is only the fruit of labor and could never have existed if labor had not first existed. Labor is the superior of capital, and deserves much higher consideration.

Certainly, the rehabilitation of the injured worker so he enjoys dignity, is a "higher consideration."

SABERS, Justice (dissenting).

I dissent. SDCL 62-4-5.1 provided in part that the employee shall receive compensation "during the period he is engaged in a program of rehabilitation which is reasonably necessary to restore the employee to suitable, substantial and gainful employment." According to the majority opinion, however, the application of Chiolis' two years of rehabilitation benefits to his college education is not a reasonable means of rehabilitation necessary to restore him to suitable, substantial and gainful employment. I disagree.

*Cozine,* cited by the majority for its holding that an employer cannot be compelled to pay for a college education if it is not necessary, is clearly distinguishable. The employee in *Cozine* sought rehabilitation benefits for her entire four-year college program even though she was not entitled to *any* rehabilitation benefits *whatsoever.* 454 N.W.2d at 553-54. Conversely, it is undisputed that Chiolis needs two years of rehabilitation to enable him to return to suitable, substantial and gainful employment. And while Chiolis is enrolled in a four-year degree program, he

is not insisting upon a college education, *see Barkdull II,* 411 N.W.2d at 410, but only asking to use the two years of rehabilitation benefits which he needs and is entitled to, to finance two of his four years of college.

SDCL 62-4-5.1 allowed rehabilitation benefits while an employee "is engaged in a program of rehabilitation which is *reasonably necessary* to restore the employee to *suitable, substantial and gainful employment.*" (Emphasis added.) As noted in Justice Henderson's dissent, this court has previously stated that worker's compensation statutes are remedial and should be liberally construed in favor of the injured employee. *Mills,* 442 N.W.2d at 246 (citations omitted). The engineering program that Chiolis is engaged in is just such a "reasonably necessary" program. Upon graduation, Chiolis will be restored to "suitable, substantial and gainful employment," and Lage will only have been "compelled to pay for" the two years of rehabilitation to which Chiolis is undeniably entitled and Lage is undeniably obligated to "underwrite."

The Hearing Officer and the Circuit Court reached a reasonable solution in this case. It provides neither windfall to Chiolis nor expense to Lage other than already required under the law. I would affirm.